# WILLIAM KUMAH ET AL. *v.* LEO G. BROWN ET AL.
## (AC 32244)

Gruendel, Robinson and Borden, Js.

Argued January 3—officially released March 15, 2011

*Kathleen Eldergill*, for the appellants (plaintiffs).

*Aamina Ahmad*, assistant town attorney, for the appellee (defendant town of Greenwich).

*Opinion*

GRUENDEL, J. The plaintiffs, William Kumah and Keziah Kumah, appeal from the judgment of the trial court rendered in favor of the defendant town of Greenwich (town)[1] granting the town's motions to strike counts four and nine of the plaintiffs' complaint alleging negligence (negligence counts) and counts five and ten of the plaintiffs' amended complaint alleging nuisance (nuisance counts).[2] On appeal, the plaintiffs claim that the court improperly (1) granted the town's motion to strike with respect to their negligence counts on the

---

[1] In addition to the town, the plaintiffs also brought suit against Leo G. Brown, Sparks Finance Company and Swift Transportation Company, Inc. For purposes of this appeal, however, the town is the sole defendant of interest. For reference purposes, we refer to Brown by name throughout this opinion.

[2] In count four of the plaintiffs' complaint and count five of the plaintiffs' amended complaint, William Kumah alleges negligence and nuisance, respectively, against the town. In count nine of the plaintiffs' complaint and count ten of the plaintiffs' amended complaint, Keziah Kumah alleges loss of consortium as a derivative claim of the negligence and nuisance causes of action.

basis of governmental immunity and (2) granted the town's motion to strike with respect to their nuisance counts on the basis of this court's decision in *Himmelstein* v. *Windsor*, 116 Conn. App. 28, 40, 974 A.2d 820, cert. granted, 293 Conn. 927, 980 A.2d 910 (2009). We agree and, accordingly, reverse the judgment of the trial court.

The following procedural history and facts, as alleged in the plaintiffs' complaint and amended complaint, are relevant to our disposition of this appeal. In the early morning of September 3, 2006, Leo G. Brown was operating a tractor trailer in a westerly direction on Interstate 95 in Greenwich. While traveling in Greenwich, Brown lost control of the tractor trailer, struck a jersey barrier and bridge railing, and eventually came to a stop in the right and center lanes of Interstate 95. Following the accident, Robert Lucas, a member of the Cos Cob fire police patrol, a volunteer organization operating in conjunction with the Greenwich fire department, responded to the scene. While assisting with the accident cleanup, Lucas parked a Greenwich fire truck diagonally across the center and right lanes of Interstate 95 and also placed safety cones along the road to alert oncoming vehicles of the accident. Shortly thereafter, William Kumah, who also was driving his automobile west on Interstate 95 in Greenwich, collided with the parked fire truck, sustaining serious physical injuries as a result.

Subsequently, the plaintiffs commenced this action against the town based on Lucas' conduct in responding to the accident.[3] In support of their claims, the plaintiffs maintained, inter alia, that the town was negligent and careless in that the fire truck and lane closures were

---

[3] There is no dispute that Lucas was acting within the scope of his official duties as a member of the Cos Cob fire police patrol and Greenwich fire department at all relevant times.

marked inadequately and the positioning of the fire truck constituted a nuisance. On September 19, 2008, the town filed a motion to strike the negligence and nuisance counts as alleged by the plaintiffs. The town argued that, with respect to their negligence counts, the plaintiffs' claims were barred by the doctrine of governmental immunity and, with respect to their nuisance counts, the plaintiffs had failed to allege facts sufficient to state a claim. On January 7, 2009, the court issued a memorandum of decision granting the town's motion to strike the plaintiffs' negligence counts on the basis of governmental immunity but denying the town's motion to strike the plaintiffs' nuisance counts. Then, on September 4, 2009, after the plaintiff filed an amended complaint, the town renewed its motion to strike the plaintiffs' nuisance counts in light of this court's decision in *Himmelstein* v. *Windsor*, supra, 116 Conn. App. 40. On January 27, 2010, the court granted the town's renewed motion to strike the plaintiffs' nuisance counts and, thereafter, granted the plaintiffs' motion for judgment in favor of the town. This appeal followed.

The plaintiffs now claim that the court improperly granted the town's motions to strike. Specifically, the plaintiffs argue that, as to their negligence counts, the doctrine of governmental immunity does not bar their claims because their complaint alleges violations of ministerial rather than discretionary duties. Additionally, with respect to their nuisance counts, the plaintiffs claim that this court's decision in *Himmelstein* is not controlling and is inapposite to the case at bar. We address each of these claims in turn. Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court improperly granted the town's motion to strike their negligence

counts on the basis of governmental immunity. Specifically, the plaintiffs argue that governmental immunity does not bar their negligence counts because their complaint alleges violations of ministerial duties, for which the town may be liable notwithstanding the doctrine of governmental immunity. We agree.

The following additional facts and procedural history are relevant to the resolution of this claim. In support of their negligence counts, the plaintiffs alleged, inter alia, that "[t]he actions and omissions of Lucas [as an agent of the town] were ministerial to the extent there exist prescribed standards, regulations, rules and/or procedures requiring that [t]own firefighters and other municipal officials perform their duties in securing a traffic accident scene in a prescribed manner without the exercise of judgment or discretion." On July 3, 2008, the town filed a request to revise the plaintiffs' negligence counts to "[specify] each and every safety standard, rule, procedure and/or regulation that allegedly created a ministerial duty on the part of the [t]own and its agents." Arguing that the negligence counts alleged facts sufficient to apprise the town of their cause of action, the plaintiffs objected to the town's request to revise, and the court sustained the plaintiffs' objection on July 28, 2008. Nonetheless, in its January 7, 2009 memorandum of decision granting the town's motion to strike the plaintiffs' negligence counts, the court concluded that "[b]y their very nature," the plaintiffs' negligence counts averred violations of discretionary rather than ministerial duties. In support of this conclusion, the court explained that "[w]hile it is so that statutes, regulations, and policies can create ministerial duties when they relate to fire, police or other public safety services, they are most often held to create discretionary duties." (Internal quotation marks omitted.) The court reasoned, therefore, that "the general rule that firefighters engage in discretionary acts when they are

in the line of duty" applied to bar the plaintiffs' negligence counts.

The plaintiffs now claim that the court improperly granted the town's motion to strike, as their negligence counts adequately plead a cause of action based on the alleged violation of ministerial rather than discretionary duties. Thus, as argued by the plaintiffs, because their negligence counts adequately aver a cause of action notwithstanding the doctrine of governmental immunity, the town's motion to strike should not have been granted.

Before addressing the merits of the plaintiffs' claims, we set forth the applicable standard of review and legal principles governing our analysis. "Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [defendant's motion] is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . *Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied.* . . . Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically. . . .

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified

immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . .

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having governmental officers and employees free to exercise judgment and discretion in their official functions, unhampered by the fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts. . . .

"The tort liability of a municipality has been codified in [General Statutes] § 52-557n. Section 52-557n (a) (1) provides that [e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . Section 52-557n (a) (2) (B) extends, however, the same discretionary act immunity that applies to municipal

officials to the municipalities themselves by providing that they will not be liable for damages caused by negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . .

"We have previously determined that governmental immunity must be raised as a special defense in the defendant's pleadings. . . . Governmental immunity is essentially a defense of confession and avoidance similar to other defenses required to be affirmatively pleaded [under Practice Book § 10-50]. . . . The purpose of requiring affirmative pleading is to apprise the court and the opposing party of the issues to be tried and to prevent concealment of the issues until the trial is underway. . . . Nevertheless, [w]here it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant is not required to plead governmental immunity as a special defense and may attack the legal sufficiency of the complaint through a motion to strike." (Citations omitted; emphasis added; internal quotation marks omitted.) *Violano* v. *Fernandez*, 280 Conn. 310, 317–21, 907 A.2d 1188 (2006).

Here, it is apparent from the face of the complaint and amended complaint that the town, acting through Lucas, was engaging in a governmental function while performing the acts and omissions complained of by the plaintiffs. See id., 321. As such, the court appropriately considered the applicability of governmental immunity in this case in the context of the town's motion to strike. Nonetheless, "tak[ing] the facts to be those alleged in the complaint that has been stricken"; (internal quotation marks omitted) id., 317; as we are required to do, it is equally apparent that the plaintiffs' negligence counts adequately plead a cause of action for the breach of ministerial duties. Therefore, "facts provable in the

complaint would support a cause of action"; (internal quotation marks omitted) id., 318; for negligence notwithstanding the doctrine of governmental immunity, as the doctrine does not shield municipalities for the misperformance of ministerial duties. Moreover, the court's conclusion that " 'statutes, regulations, and policies can create ministerial duties . . . [but that] they are most often held to create discretionary duties,' " illustrates the court's overreaching in granting the town's motion to strike. The court's inquiry should have been limited to a consideration of whether, if proven, the facts as alleged in the complaint would support a cause of action irrespective of the doctrine of governmental immunity. Our review of the record clearly demonstrates that the plaintiffs' negligence counts were sufficient to overcome this threshold determination in the context of a motion to strike, and, therefore, the court's conclusion to the contrary was improper.

We conclude that the plaintiffs' negligence counts adequately plead a cause of action for violations of ministerial rather than discretionary duties. Thus, the court improperly granted the town's motion to strike on the ground of governmental immunity.

II

The plaintiffs next claim that the court improperly granted the town's motion to strike their nuisance counts on the basis of this court's decision in *Himmelstein* v. *Windsor*, supra, 116 Conn. App. 40. Specifically, the plaintiffs argue that *Himmelstein* is distinguishable on its facts and, as such, not controlling in the present case. We agree.

In *Himmelstein*, the plaintiff brought suit against the town of Windsor and the Windsor police department after sustaining physical injuries when the bicycle he was riding struck a Windsor police department radar trailer. Id., 31. In addition to alleging a breach of General

Statutes § 13a-149,[4] the plaintiff sought recovery against the town on a theory of nuisance. Id. In support of his claims, the plaintiff alleged that the "[t]own of Windsor . . . is . . . charged with the statutory duty of maintaining, repairing and otherwise rendering safe town streets," including the street on which his injuries were sustained. *Himmelstein* v. *Windsor*, Conn. Appellate Court Records & Briefs, March Term, 2009, Record p. 5. The town of Windsor filed a motion to strike the plaintiff's nuisance claim, arguing that, because the plaintiff's claim fell within the ambit of § 13a-149, that statute provided the exclusive remedy available to him. *Himmelstein* v. *Windsor*, supra, 116 Conn. App. 31–32. The trial court granted the motion to strike, and the plaintiff appealed to this court. Id., 32–33. On appeal, the plaintiff argued that the court improperly granted the motion to strike, as his nuisance claim was legally sufficient despite the applicability of § 13a-149. Id., 36–40. In rejecting the plaintiff's argument, this court held that, because the plaintiff's nuisance claim as pleaded fell within the ambit of § 13a-149, that statute provided the exclusive remedy, and, thus, the motion to strike the nuisance claim was appropriately granted. Id., 40.

In the present case, unlike in *Himmelstein,* the plaintiffs have not alleged that Interstate 95 is a road that the town is "bound to keep . . . in repair" pursuant to § 13a-149. Indeed, it would be disingenuous to conclude that the town is responsible for the upkeep, maintenance and repair of Interstate 95, a major thoroughfare spanning the state. Therefore, the plaintiffs' nuisance counts are clearly distinguishable from those asserted in *Himmelstein,* as the plaintiffs' nuisance counts here do not fall within the scope of § 13a-149. As such, we conclude that the trial court improperly granted the

---

[4] General Statutes § 13a-149 provides in relevant part: "Any person injured in person . . . by means of a defective road . . . may recover damages from the party *bound to keep it in repair*. . . ." (Emphasis added.)

town's motion to strike the plaintiffs' nuisance counts on the basis of this court's decision in *Himmelstein*.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.