******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM KUMAH ET AL. *v.* LEO G.
BROWN ET AL.
(AC 36716)

Beach, Mullins and Bishop, Js.

*Argued April 14—officially released October 27, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Radcliffe, J.)

*Nathaniel E. Baber*, for the appellants (plaintiffs).

*Brendon P. Levesque*, with whom were *Kenneth J. Bartschi* and, on the brief, *Karen L. Dowd* and *Aamina Ahmad*, for the appellee (defendant town of Greenwich).

*Opinion*

BEACH, J. The plaintiffs, William Kumah and Keziah Kumah, appeal from the judgment of the trial court rendered following the denial of their motion to set aside the verdict in favor of the defendant town of Greenwich.[1] The plaintiffs claim on appeal that the trial court abused its discretion when it denied their motion to set aside the verdict because the jury's answers to the special interrogatories in the verdict form were inconsistent. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 1:50 a.m. on September 3, 2006, a tractor trailer rolled over on Interstate 95. The tractor trailer leaked diesel fuel and occupied the right and center lanes of the highway, as well as part of the right shoulder. Members of the defendant's volunteer fire department responded to the scene and established a temporary traffic control zone. The volunteer firefighters stationed a fire truck, with flashing lights, on the right shoulder of the highway; later, they moved it so that it was positioned diagonally across the middle and right travel lanes, as well as a portion of the right-hand shoulder. The firefighters placed cones as warnings to approaching traffic. At approximately 4:10 a.m., the vehicle operated by William Kumah collided with the lit firetruck. He was seriously injured. The plaintiffs then filed the present action.

Willam Kumah alleged negligence and nuisance in separate counts, and his wife, Keziah Kumah, alleged loss of consortium.[2] In its instructions to the jury, the court summarized the plaintiffs' allegations of negligence: "One, that the [defendant] positioned the traffic cones in a manner that violated recognized and prescribed safety standards, rules, procedures, and/or regulations. Second, that the [defendant] failed to establish an advanced warning area to protect oncoming motorists. And third, that the [defendant] failed to post signs or otherwise provide advanced warning to oncoming motorists after placing the fire truck on the travel portion of the highway."[3] The court also instructed the jury on the defenses of comparative negligence and qualified immunity. As to the nuisance count, the court instructed the jury that the plaintiffs alleged that "through the positive acts of its agents and employees, [the defendant] created and maintained a nuisance on the highway on September 3, 2006."

The jury returned a verdict in the form of answers to interrogatories. It concluded, as to the negligence count, that the defendant had been negligent, but that recovery was barred by the operation of qualified immunity. Specifically, as to the claim of negligence, the jury found that the defendant had been negligent "in one or more of the ways specified in the complaint," but that "all of the negligence . . . involved the exercise of

judgment or discretion, and therefore was not 'ministerial' . . . ." As to the nuisance count, the jury concluded that the placement of the fire truck did not constitute a public nuisance and, thus, found in favor of the defendant. The jury found that the defendant had "created a condition on the highway which had a natural tendency to create danger and inflict injury to persons and/or property," and that the danger was a continuing one. The jury did not find, however, that the use of the land by the defendant was "unreasonable, given the circumstances." The plaintiffs moved to set aside the verdict on the ground that the answers to the interrogatories were inconsistent, the trial court denied the motion, and rendered judgment in favor of the defendant. This appeal followed.

The plaintiffs claim that the court erred in failing to set aside the jury's verdict because the jury's finding that the defendant was negligent was inconsistent with its express finding that the defendant's use of the land was not unreasonable. The plaintiffs argue that the same allegations underlay both the negligence and nuisance claims, and that the jury could not have found that the defendant acted both reasonably and unreasonably simultaneously with respect to the same conduct.[4] We conclude that the interrogatories can be harmonized.

"The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles . . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb. . . .

"The role of an appellate court where an appellant seeks a judgment contrary to a general verdict on the basis of the jury's allegedly inconsistent answers to such interrogatories is extremely limited. . . . To justify the entry of a judgment contrary to a general verdict upon the basis of answers to interrogatories, those answers must be such in themselves as conclusively to show that as [a] matter of law judgment could only be rendered for the party against whom the general verdict was found; they must negative every reasonable hypothesis as to the situation provable under the issues made by the pleadings; and in determining that, the court may consider only the issues framed by the pleadings, the general verdict and the interrogatories, with the answers made to them, without resort to the evidence offered

at the trial. . . . *When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers.*" (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *Froom Development Corp.* v. *Developers Realty, Inc.*, 114 Conn. App. 618, 625–27, 972 A.2d 239, cert. denied, 293 Conn. 922, 980 A.2d 909 (2009).

We disagree with the plaintiffs' argument that the answers to the interrogatories are fatally inconsistent. It does not follow that simply because the jury found, as to one or more of the alleged acts or omissions, that the defendant had breached its duty to act as an ordinarily prudent person, it then necessarily had to find that the defendant's use of the land was unreasonable in the circumstances.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 29, 930 A.2d 682 (2007). "A defendant's duty and breach of duty is measured by a reasonable care standard, which is the care [that] a reasonably prudent person would use under the circumstances." (Internal quotation marks omitted.) *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 776, 83 A.3d 576 (2014).

With respect to nuisance, "a plaintiff must prove four elements to succeed in a nuisance cause of action: (1) the condition complained of had a natural tendency to create danger and inflict injury [on] person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages. . . . In addition, when the alleged tortfeasor is a municipality, our common law requires that the plaintiff also prove that the defendants, by some positive act, created the condition constituting the nuisance." (Citation omitted; internal quotation marks omitted.) *Picco* v. *Voluntown*, 295 Conn. 141, 146, 989 A.2d 593 (2010). "Whether an interference is unreasonable in the public nuisance context depends . . . on (a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (b) whether the conduct is proscribed by [law] . . . . The rights common to the general public can include, but certainly are not limited to, such things as the right to use a public park, highway, river or lake." (Citation omitted; internal quotation marks omitted.) *Shukis* v. *Board of Education*, 122 Conn. App. 555, 587, 1 A.3d 137 (2010).

The standards of reasonableness regarding negligence and nuisance are different; the trial court's apt instructions to the jury reflected the difference.[5] Although the allegations regarding the conduct underly-

ing both the negligence and nuisance counts were similar; see footnote 3 of this opinion; the jury reasonably could have found the defendant was negligent as to the conduct giving rise to one or more of the allegations of negligence, while not finding that nuisance had been proven. There were two separate and distinct causes of action implicating different elements and standards. The jury could have found, for example, that a reasonably prudent town would have added more traffic cones or placed them differently, but that it was not unreasonable overall, given the emergency, for the town to interfere with the public's access to the highway generally by placing the fire truck in front of the disabled tractor trailer and generally guarding the scene.[6] The interrogatories were not necessarily inconsistent; therefore, the court did not abuse its discretion in denying the plaintiffs' motion to set aside the verdict.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiffs sued several entities. The only defendant that remained in the action at the time of trial, however, was the town of Greenwich. For simplicity, we refer to the town of Greenwich as the defendant.

[2] This court and our Supreme Court previously have considered prior appeals in this case. See *Kumah* v. *Brown*, 127 Conn. App. 254, 14 A.3d 1012 (2011), aff'd, 307 Conn. 620, 58 A.3d 247 (2013). The trial court previously had struck the counts sounding in negligence and in nuisance, and this court reversed the judgment as to both counts. *Kumah* v. *Brown*, supra, 127 Conn. App. 255, 262, 263–64. We held that the negligence count, which included allegations on which a breach of a ministerial duty could be found, withstood a motion to strike even if qualified immunity was raised as a special defense. Id., 261–62. We also held that recovery in nuisance was not barred by our prior holding in *Himmelstein* v. *Windsor*, 116 Conn. App. 28, 40, 974 A.2d 820 (2009), aff'd, 304 Conn. 298, 39 A.3d 1065 (2012), and that the nuisance count stated a cognizable cause of action. See *Kumah* v. *Brown*, supra, 127 Conn. App. 263–64. After this court's judgment was affirmed by our Supreme Court, the case was, accordingly, remanded for further proceedings as to both counts.

[3] The plaintiffs' factual allegations in the negligence and nuisance counts were similar. In the operative complaint, the plaintiffs alleged in both counts that the defendant positioned the fire truck in such a way that: its lights were not sufficiently visible; it caused the plaintiff's vehicle to rotate and to strike a barrier after the initial collision; it created a danger to oncoming motorists; it violated safety standards; and it did not secure the accident scene. The plaintiffs alleged that the defendant had not placed traffic cones: at an adequate distance; in a way that warned motorists; in a way that protected oncoming motorists; or in a way that followed safety standards, rules, and procedures. The plaintiffs also alleged that the defendant failed to provide adequate lighting, violated safety standards and procedures, and failed to establish an advance warning area.

[4] The defendant argues that the jury reasonably could have found the defendant negligent as to one or more of the alleged omissions, but also, and not inconsistently, that its positive act of placing the fire truck in the road was not unreasonable in the circumstances. The plaintiffs argue that the requirement, in order to recover damages, that the creation of a nuisance has to be by means of a positive act, has no bearing on the question of whether the defendant's use of the land was reasonable. We need not consider this specific argument because we conclude that the answers to the interrogatories can be harmonized for other reasons.

[5] Regarding reasonableness in the negligence count, the court instructed the jury: "[N]egligence is the failure to use or exercise due care or reasonable care as it is sometimes called. *Reasonable care is that amount of care which a reasonably prudent person would use or exercise under the same or similar circumstances then and there existing. Negligence is the doing of something which a reasonably prudent person would not do under the same or similar circumstances, or on the other hand, the failure to do*

*what a reasonably prudent person would have done given the same or similar circumstances.* All of the circumstances must be considered, and in considering circumstances of slight danger, a slight amount of care would be sufficient to constitute reasonable care, while in circumstances of great danger, accordingly, a great amount of care would be required to constitute reasonable care. But the ultimate test of the duty to use reasonable care is to be found in the foreseeability that harm may result if that care is not exercised." (Emphasis added.)

Regarding reasonableness in the context of the nuisance count, the court gave the jury the following instruction: "[T]he plaintiffs must prove that the use of the land, in this case, the westbound or southbound lane of the travel portion of Interstate 95 on the Mianus River Bridge was unreasonable. In making a determination concerning the reasonableness of the use of the highway, all of the surrounding factors must be considered, including the situation facing the responders upon their arrival on the scene, the weather conditions, and the conditions on the road, the volume of traffic, and other factors bearing upon reasonableness."

[6] Reasonableness in the nuisance context weighs the utility of the interference with the public right against the degree or severity of the interference. See 4 Restatement (Second), Torts § 826, p.119 (1979) ("[a]n intentional invasion of another's interest in the use and enjoyment of land is unreasonable if . . . the gravity of the harm outweighs the utility of the actor's conduct . . . ."); see also 58 Am. Jur. 2d 632–33, Nuisances § 79 (2012) ("the court must balance the gravity of the harm to the plaintiff against the utility of the defendant's conduct both to the defendant and to the community"). Such considerations are germane to deciding whether an interference with public safety is significant. See *Shukis* v. *Board of Education*, supra, 122 Conn. App. 587.

The jury in this case was properly instructed to consider all of the circumstances surrounding the alleged interference with the public use of the highway, including, as the trial court instructed the jury, "the situation facing the responders." See, e.g., *Prifty* v. *Waterbury*, 133 Conn. 654, 658, 54 A.2d 260 (1947); *Balaas* v. *Hartford*, 126 Conn. 510, 514, 12 A.2d 765 (1940). The jury may well have decided that the interference imposed by the defendant was minimal, in comparison to the interference caused by the initial accident, and that the social utility of guarding the scene with, inter alia, flashing lights was great, even though a detail such as the placement of a cone may not have been prudently executed. We further note that we are not presented in this case with issues such as whether the allegations presented a continuing interference or whether the actions of the defendant, as opposed to the driver, actually created an interference with public safety at all. Cf. *Chirieleison* v. *Lucas*, 144 Conn. App. 430, 443, 444–45, 72 A.3d 1218 (2013).

[7] The plaintiffs also claim that the evidence was sufficient to support their claim of nuisance. Because we conclude that the answers to the interrogatories were not necessarily inconsistent, and the jury did not find for the plaintiffs on the nuisance count, we need not address the question of whether evidence was sufficient. No issue as to the sufficiency of the evidence is before us.